UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

| | |
|---|---|
| In re<br><br>ANDREW GREENHUT,<br><br>Debtor. | Chapter 13<br>Case No. 19-10782-JNF |

**RESPONSE OF CREDITOR GITA SRIVASTAVA TO
DEBTOR'S AMENDED MOTION TO EMPLOY SPECIAL COUNSEL**

Gita Srivastava ("Srivastava"), the holder of a divorce-related claim against Andrew Greenhut (the "Debtor") and the only significant bona fide claim holder in this case, hereby files this Limited Response to *Amended Motion of Debtor to Employ Special Counsel* [Doc. No. 28] (the "Motion to Employ"). Although the Debtor has substantially cured the technical failings of his Motion to Employ, the underlying equitable issues remain. The Debtor's bankruptcy filing, coinciding with his attempted collateral attack on his agreed divorce judgment, is a transparent, bad-faith attempt to short circuit the Texas appellate process. Although the Debtor is subject to at least *nine* separate rulings requiring him to perform under the terms of his *agreed-upon* divorce settlement with Srivastava, the Debtor remains in contempt of that agreement. In the Motion to Employ, the Debtor seeks Court approval of his Texas appellate counsel. Srivastava objects to such approval to the extent the Debtor seeks to commit funds (including any funds held in retainer) to counsel which should instead be used to pay the Debtor's obligations to her. In his very Motion to Employ, the Debtor concedes that he in fact agreed to and never appealed the orders he is now collaterally attacking. In further support of this Response, Srivastava represents as follows:

**Prepetition Divorce Proceedings**

1.  Debtor is a serial litigant who is no stranger to the courts and has already dragged his former wife and creditor Srivastava through four years of litigation. The dispute between the Debtor and Srivastava comprises Debtor's collateral attacks on a court-approved final divorce settlement. After seeking to enforce the judgment himself, including reaping the financial benefits of the agreed judgment, the Debtor suddenly changed his mind and decided to collaterally attack the final judgment that he never appealed. The Debtor's bankruptcy filing, coming contemporaneously with his continued efforts to challenge Texas divorce court orders, is merely the latest attempt to evade long-standing court orders. The Debtor has spent the last three years spending the money he owes Srivastava on frivolous litigation attacking the agreed divorce judgment. Texas courts have rejected his attacks, as should this Court. Because this litigation history provides necessary context on the Debtor's present Motion to Employ and his bankruptcy petition, a detailed summary of the prepetition proceedings follows.

2.  The Debtor and Srivastava married in Texas in 2007, and their daughter, D.S.[1], was born in January 2015. The Debtor's reaction to the birth of D.S. was to demand from the Texas courts that he be officially relieved of any parental obligation. D.S., he wrote, impeded the extreme sexual adventures he desired. The Debtor began to exhibit "extreme anger" towards Srivastava and D.S., threatening both their emotional and physical safety. In handwritten notes, the Debtor described his growing "resentment" towards the child. The Debtor demanded "freedom": "not to feel imposed on by wife, child, or family or anyone." He "s[ought] refuge in unhealthy extremes that hurts [Srivastava] and puts [D.S.] at risk." Realizing that his vile desires

---

[1] Srivastava's child, a minor, is referred to as "D.S." in compliance with Rule 9037 of the Federal Rules of Bankruptcy Procedure and Massachusetts Local Bankruptcy Rule 9037-1. In contravention of such rules, the Debtor has failed to redact his filings and has identified D.S. by her full name.

2

would "lead to people getting hurt," he recognized that "[t]he responsible thing [was] to end the cycle before endangering [D.S.]."

3.  Termination was *his* idea. The Debtor, a well-paid and highly educated MIT graduate, researched the process and consulted with attorneys before deciding that the best way to achieve the freedom he demanded was terminating his parental rights. Afterwards, he could finally "be independent and have more control over [the] burdens of family life."

4.  The Debtor confronted Srivastava in Dallas and threatened to kill her and D.S. if Srivastava did not agree to terminate his parental rights. Srivastava assented. Based on Debtor's voluntary irrevocable affidavit of relinquishment, the Texas court entered a judgment terminating the Debtor's parental rights (the "Termination Order"). The Debtor concedes in his Motion to Employ that the surrender of his rights was voluntary. Separately, the Texas court rendered an Agreed Final Decree of Divorce (the "Agreement") that implemented the parties' agreed property division. The Debtor failed to appeal either judgment. Much later, however, he filed bills of review, collaterally attacking them.

5.  The Texas court found that before his collateral attack, the Debtor "took action to effectuate the property division set forth in the Agreed Final Decree of Divorce." For example, the Debtor "voluntarily signed a Letter of Instruction to Fidelity, attaching the executed Agreed Final Decree of Divorce and instructing Fidelity to transfer assets pursuant to the Agreed Final Decree of Divorce." Indeed, the Debtor also made the first five of the sixty property division payments set forth in the Agreement. After five months, he stopped making payments and decided to stop complying with the court order. The Debtor then spent the next three years refusing to comply with the property division he himself requested.

6. In July 2016, Srivastava was forced to file a Petition for Enforcement of Property Division. Both parties appeared with counsel in March 2017 and, after a trial, the court entered judgment against the Debtor. Rejecting the Debtor's "the-check-is-in-the-mail" defense, the Texas court found ten separate violations of the Agreement and rendered judgment against the Debtor in the amount of $38,000, plus fees and interest. The Debtor still refused to pay.

7. The Debtor then launched a frivolous collateral attack on the Agreement, which has so far been rejected by Texas trial and appellate courts. The Debtor asserted that the Agreement was one-sided in Srivastava's favor. In truth, it was the Debtor himself who handled all marital finances prior to the divorce and prepared the division. The real property Srivastava was awarded was an uninhabitable and heavily mortgaged money pit. Tellingly, when Srivastava asked to flip the division, believing it to be unfair, the Debtor refused.

8. The Debtor also accused his former wife of allegedly duping him into the Agreement—a story the Texas courts resoundingly rejected. After a full trial, the district court found the "[Debtor] signed the Agreed Final Decree of Divorce voluntarily." "[Debtor] did not sign the Agreed Final Decree of Divorce because of fraud, duress, or coercion." "[Debtor] approved and consented to the decree as to both form and substance." The Texas court also found that the "[Debtor] was negligent and at fault" and "failed to exercise due diligence." Ultimately, the "[Debtor] failed to prove any element of his bill of review," and his attack was "barred" due to "estoppel, waiver, acceptance of the benefits, and unclean hands."

9. The Debtor appealed his denial of his collateral attack but did not challenge any of the above findings of fact or conclusions of law. In July 2018, the Dallas Court of Appeals denied the Debtor's appeal. Yet the Debtor still refused to pay or comply with the numerous court orders.

10. In August 2018, to effectuate the March 2017 enforcement judgment, Srivastava was forced to obtain—at significant personal expense—three garnishment judgments against accounts owned by the Debtor. The Debtor continued his pattern of refusing to accept the court's ruling and filed a motion for new trial in the garnishment case. The Texas court denied his motion on February 6, 2019. After failing to achieve his desired results in more than 10 proceedings in Texas courts over the last three years, the Debtor now brings his claims to the Massachusetts Bankruptcy Court in a last-ditch effort to escape the effects of his knowing and voluntary actions in Texas.

11. The Debtor mischaracterizes his collateral attack on the Termination Order as a successful appeal. It was no such thing. The Debtor merely obtained yet another opportunity to attempt to attack the Termination Order, despite his having failed to timely appeal that voluntary order. The appeals court which granted the Debtor this opportunity certainly did not opine on the likelihood of success of such an attack. The Debtor's attempts to obtain relief from final orders he himself requested remains as desperate and unlikely as ever.

### The Debtor's Bankruptcy Filing

12. On March 12, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 13 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Massachusetts (Eastern Division).

13. In his Schedules of Assets and Liabilities [Doc. No. 1] (collectively, the "Schedules"), the Debtor identifies the claim of Srivastava as "disputed" in the amount of $164,500 on a general unsecured basis. Although the Agreement upon which the claim is based was entered into and approved in 2015, the Debtor alleges that the claim was incurred only in

5

2018. The Debtor has failed to include interest, costs and potential attorneys' fees, all of which could dramatically increase the amount of Srivastava's claim.

14. Tellingly, Debtor's story changes from court to court to suit his interests at the time. For example, Debtor claimed the decree payments were for the benefit of the child in Texas courts to boost his challenge to the termination order, while stating unequivocally in this proceeding that those were not support payments to enable his request for discharge.

15. The only other significant claim disclosed by the Debtor is a purported loan from his parents in the amount of $219,167.24. Upon information and belief, the alleged loan is merely the Debtor's attempt to disguise the bankruptcy filing as a good-faith filing, and to dilute any potential distribution to Srivastava.

16. The Debtor's Schedules also reveal income of nearly $13,000 per month, despite the Debtor's voluntary contributions to savings plans in the amount of approximately $1,600 per month while at the same time defaulting on multiple payment orders in connection with the Agreement. Such transfers to ordinarily exempt saving vehicles expose the Debtor's attempt to hinder, delay or defraud his creditors, including Srivastava. The Debtor's Statement of Financial Affairs also discloses income from investments exceeding $80,000 for the two years prior to the Petition Date. The Debtor's Schedule I does not reflect any such income, nor does the Debtor indicate that he expects any increase or decrease in income.

17. Moreover, the Debtor's Schedules also reflect unreasonably inflated expenses, including, *inter alia*, $1,266.83 for "Expenses related to pet, legal fees and tax and bank Srvs." (Schedule J, Line 21), despite already withholding over $3,000 per month for taxes (Schedule I, Line 5a) and identifying additional taxes of $379 (Schedule J, Line 16). Spending 10% of his

monthly income on spurious legal appeals is not reasonable, necessary, nor equitable to the Debtor's creditors.

18. The Debtor filed a Chapter 13 Plan [Doc. No. 9] (the "Plan") on March 12, 2019. In his Plan, the Debtor proposes to make payments equal to approximately 27%. Setting aside the Debtor's baseless assertion that Srivastava's claim is subject to a bona fide dispute, the distribution to her over the 60-month term of the Plan would amount to approximately $44,744. At the same time, the Debtor proposes to pay $59,613.49 to his parents. Absent the purported loan from his parents, the distribution to Srivastava would be about $104,357.49. If the Debtor's contributions to savings on the backs of his creditors were eliminated, together with spending on frivolous legal disputes, that distribution would be increased to 100%, with more than $110,000 remaining at the end of the five-year Plan. The Debtor has made every effort to gerrymander his bankruptcy in such a way as to improperly limit payments to Srivastava. Srivastava anticipates filing an objection to the Plan.

## The Debtor's Motion to Employ

19. The Debtor filed the Motion to Employ on May 6, 2019, amending his noncompliant motion to employ filed previously. In the Motion to Employ, the Debtor seeks this Court's approval of his request to employ Attorney Charles Baruch of Texas in connection with a pending proceeding in that state.

20. Equitably, as discussed above, the Debtor's motion to appoint counsel arises from his refusal to abide by judgments to which he previously agreed in the Texas courts. Further exhausting assets which should have long ago been paid to Srivastava is not an appropriate use of the Debtor's estate.

21. By the Debtor's own admission, engaging counsel at this stage would be premature. The Debtor concedes in the Motion to Employ that no pending action is required in Texas. *See* Motion to Employ, ¶ 8 ("As of the date of the filing of this Amended Motion, the Texas Supreme Court has not as yet issued a decision on whether to grant the Petition for Review of the Debtor's former spouse."). The Petition for Review is fully briefed and awaits action from the Texas Supreme Court on whether it will seek briefing on the merits or deny review. Unless and until "the Texas Supreme Court does issue an order allowing the Petition for Review," there is no need for "further postpetition . . . representation" nor is there need to incur debt to counsel. Motion to Employ, ¶ 9. No postpetition action would be required of Debtor unless or until a response to briefing on the merits is required.

22. Furthermore, Texas provides no absolute right to counsel for civil litigants. While Srivastava does not, in principle, oppose the employment of counsel to assist the Debtor in the pending Texas proceedings, she does expressly reserve her rights with respect to challenging compensation of such counsel, especially in light of the repeated and failed past collateral attacks of the Debtor.

23. The Motion to Employ is also unclear on the full scope of Mr. Baruch's proposed employment. The Debtor allegedly seeks to employ Mr. Baruch to "provid[e] any additional legal services so as to assiduously represent the interests of the Debtor before the Texas Supreme Court." Motion to Employ, ¶ 12. There is concern that the Debtor may attempt to utilize Mr. Baruch's services in connection with further collateral attacks on the final judgment approving his proposed property settlement as well, all while the bankruptcy stay prevents Ms. Srivastava from moving forward on her own rights to collect on final judgments against him. Ms. Srivastava, as the Debtor's only legitimate creditor of any consequence, should not be expected

to bear the expense of yet another frivolous challenge to any of the nine orders previously defeating the Debtor's repeated attempts.

WHEREFORE, for all of the foregoing reasons, Srivastava requests that: (i) any order with respect to the employment of counsel by the Debtor, whether via the present Motion to Employ or otherwise, (a) be held for consideration until after the Texas Supreme Court issues a decision on the Petition for Review, (b) specifically reserve judgment on the application of any retainer held by counsel and the source and amount of any award or payment of fees, and (c) be restricted to retention for Case No. 18-0908 in the Texas Supreme Court; and (ii) the Court grant Srivastava such other and further relief as just and necessary.

Respectfully submitted,

GITA SRIVASTAVA,

By her attorneys,

/s/  Alex F. Mattera
Alex F. Mattera, BBO No. 641760
Partridge Snow & Hahn LLP
30 Federal Street
Boston, MA  02110
Telephone:  (857) 214-3118
Facsimile:   (617) 272-7910
Email:       amattera@psh.com

Dated:  May 20, 2019

**CERTIFICATE OF SERVICE**

I, Alex F. Mattera, hereby certify that on the 20th day of May 2019 I caused to be served a copy of the above pleading on all parties registered for electronic service through the CM/ECF system.

/s/ Alex F. Mattera
Alex F. Mattera