UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

| | |
|---|---|
| In re<br><br>ANDREW GREENHUT,<br><br>Debtor. | Chapter 13<br>Case No. 19-10782-JNF |

**MOTION OF CREDITOR GITA SRIVASTAVA
TO DISMISS DEBTOR'S CASE**

Gita Srivastava ("Srivastava"), the holder of divorce-related claims against Andrew Greenhut (the "Debtor"), hereby moves this Honorable Court to enter an order dismissing the Debtor's chapter 13 bankruptcy filing. The Debtor's obligations exceed the debt limits imposed by 11 U.S.C. § 109(e). Furthermore, cause for dismissal exists pursuant to 11 U.S.C. § 1307(c). This is essentially a two-party dispute, and the Debtor lacks any other meaningful debt. Moreover, the Debtor has filed his bankruptcy to avoid state court judgments from Texas and has not made any honest attempt to repay his debts. The Debtor's case, therefore, constitutes bad faith and must be dismissed. In further support of this Motion, Srivastava represents as follows:

**Prepetition Divorce Proceedings**

1.      Debtor is a serial litigant who is no stranger to the courts and has already dragged his former wife and creditor Srivastava through four years of litigation. The dispute between the Debtor and Srivastava comprises Debtor's collateral attacks on a court-approved final divorce settlement. After seeking to enforce the judgment himself, including reaping the financial benefits of the agreed judgment, the Debtor suddenly changed his mind and decided to collaterally attack the final judgment that he never appealed. The Debtor's bankruptcy filing,

coming contemporaneously with his continued efforts to challenge Texas divorce court orders, is merely the latest attempt to evade long-standing court orders. The Debtor has spent the last three years spending the money he owes Srivastava on frivolous litigation attacking the agreed divorce judgment. Every Texas court examining the issue has rejected his attacks.

2. On November 25, 2015, the Texas court rendered an Agreed Final Decree of Divorce (the "Agreement") that implemented the parties' agreed property division. The Debtor never appealed the judgment. Much later, however, he filed bills of review, collaterally attacking the judgment because the appeal deadline had long since expired.

3. The Texas court found that before his collateral attack, the Debtor "took action to effectuate the property division set forth in the Agreed Final Decree of Divorce." For example, the Debtor "voluntarily signed a Letter of Instruction to Fidelity, attaching the executed Agreed Final Decree of Divorce and instructing Fidelity to transfer assets pursuant to the Agreed Final Decree of Divorce." Indeed, the Debtor also made the first five of the sixty property division payments set forth in the Agreement. After five months, he stopped making payments and decided to stop complying with the court order. The Debtor then spent the next three years refusing to comply with the property division he himself requested.

4. In July 2016, Srivastava was forced to file a Petition for Enforcement of Property Division. Both parties appeared with counsel in March 2017 and, after a trial, the court entered judgment against the Debtor. Rejecting the Debtor's "the-check-is-in-the-mail" defense, the Texas court found ten separate violations of the Agreement and rendered judgment against the Debtor in the amount of $38,000, plus fees and interest. The Debtor still refused to pay.

5. The Debtor then launched a frivolous collateral attack on the Agreement, which has been rejected by Texas trial and appellate courts. The Debtor asserted that the Agreement

was one-sided in Srivastava's favor. In truth, it was the Debtor himself who handled all marital finances prior to the divorce and prepared the division. The real property Srivastava was awarded was an uninhabitable and heavily mortgaged money pit. Tellingly, when Srivastava asked to flip the division, believing it to be unfair, the Debtor refused.

6.      The Debtor also accused his former wife of allegedly duping him into the Agreement—a story the Texas courts resoundingly rejected. After a full trial, the district court found the "[Debtor] signed the Agreed Final Decree of Divorce voluntarily." "[Debtor] did not sign the Agreed Final Decree of Divorce because of fraud, duress, or coercion." "[Debtor] approved and consented to the decree as to both form and substance." The Texas court also found that the "[Debtor] was negligent and at fault" and "failed to exercise due diligence." Ultimately, the "[Debtor] failed to prove any element of his bill of review," and his attack was "barred" due to "estoppel, waiver, acceptance of the benefits, and unclean hands."

7.      The Debtor appealed the denial of his collateral attack but did not challenge any of the above findings of fact or conclusions of law. In July 2018, the Dallas Court of Appeals denied the Debtor's appeal. Yet the Debtor still refused to pay or comply with the numerous court orders.

8.      In August 2018, to effectuate the March 2017 enforcement judgment, Srivastava was forced to obtain—at significant personal expense—three garnishment judgments against accounts owned by the Debtor. The Debtor continued his pattern of refusing to accept the court's ruling and filed a motion for new trial in the garnishment case. The Texas court denied his motion on February 6, 2019. After failing to achieve his desired results in more than 10 proceedings in Texas courts over the last three years, the Debtor now brings his claims to the

Massachusetts Bankruptcy Court in a last-ditch effort to escape the effects of his knowing and voluntary actions in Texas.

### The Debtor's Bankruptcy Filing

9. On March 12, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 13 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Massachusetts (Eastern Division).

10. In his Schedules of Assets and Liabilities [Doc. No. 1] (collectively, the "Schedules"), the Debtor identifies the claim of Srivastava as "disputed" in the amount of $164,500 on a general unsecured basis. Although the Agreement upon which the claim is based was entered into and approved in 2015, the Debtor alleges that the claim was incurred only in 2018. The Debtor has failed to include interest, costs and attorneys' fees, all of which could dramatically increase the amount of Srivastava's claim.

11. The Agreement also provides that, should the Debtor receive any inheritance, gift, windfall, or increase in income of $30,000 per year or more, *for the remainder of the Debtor's life*, the Debtor shall pay such increase to Srivastava. For purposes of the Agreement, the Debtor's income was stipulated at $140,000. In order to enforce this provision, the Debtor is also required to report increases in his income and any gifts or inheritance to Srivastava. The Debtor has consistently failed to do so. The Texas court stated that his failure to make the required reports constitutes a misrepresentation: "So if any of those things did happen, a report needs to be sent. Failing to send a report is a representation that those things did not happen." Transcript of: "Enforcement Hearing and Motion to Compel" Supplemental Reporter's Record, Volume 4 Of 5 Volumes, Trial Court Cause No. 470-55383-2015, In The Matter Of The Marriage Of Gita Srivastava And Andrew D. Greenhut at 48, lines 6–17.

4

12. Notwithstanding the Debtor's ongoing failure and refusal to report required income pursuant to the Agreement, the Debtor's Schedules reflect income in 2017 in the amount of $196,212.51 and 2018 in the amount of $210,036.66. Presumably, there are additional years (at least 2016) and/or sources for which the Debtor received excess income, gifts, or inheritance but did not disclose them on his Schedules or elsewhere. Based on these two years alone, the Debtor is liable to Srivastava for an additional $126,249.17, together with applicable interest.

13. The Debtor's Schedules also reveal income of nearly $13,000 per month, despite the Debtor's voluntary contributions to savings plans in the amount of approximately $1,600 per month while at the same time defaulting on multiple payment orders in connection with the Agreement. Such transfers to ordinarily exempt saving vehicles expose the Debtor's attempt to hinder, delay or defraud his creditors, including Srivastava. The Debtor's Statement of Financial Affairs also discloses income from investments exceeding $80,000 for the two years prior to the Petition Date. The Debtor's Schedule I does not reflect any such income, nor does the Debtor indicate that he expects any increase or decrease in income.

14. Moreover, the Debtor's Schedules also reflect unreasonably inflated expenses, including, *inter alia*, $1,266.83 for "Expenses related to pet, legal fees and tax and bank Srvs." (Schedule J, Line 21), despite already withholding over $3,000 per month for taxes (Schedule I, Line 5a) and identifying additional taxes of $379 (Schedule J, Line 16). Spending 10% of his monthly income on spurious legal appeals is not reasonable, necessary, nor equitable to the Debtor's creditors.

15. The only other significant claim disclosed by the Debtor is a purported loan from his parents in the amount of $219,167.24. On May 21, 2019, the Debtor's parents, Gloria and Alan Greenhut, filed a proof of claim alleging an unsecured, nonpriority claim in the amount of

5

$219,167.24. In support of such claim, the Debtor's parents provide a purported promissory note that was signed only on December 7, 2018, just *weeks* before the Debtor signed bankruptcy petition documents in January 2019, and only *after* the garnishments were in place against the Debtor.[1] Significantly, the promissory note allegedly covers transfers already made to the Debtor over the two-and-one-half-year period prior to the Petition Date. This alleged loan is merely the Debtor's transparent attempt to misrepresent his parents' gifts and support as a loan, and to dilute any potential distribution to Srivastava.[2]

16. The timing of the Debtor's parents' purported promissory note and the bankruptcy filing expose the Debtor's bad faith. The Debtor was drawing out the garnishments with frivolous motions while planning the bankruptcy, papering the alleged promissory note and affidavits. The Debtor then strategically held those documents for two months, filing them only after Srivastava had filed response papers on March 1st to his frivolous litigation in Texas. The Debtor then filed his bankruptcy petition days later on March 12th, which stayed the litigation in Texas. Again, this series of behavior shows an attempt to maximize harm to Srivastava rather than any honest attempt to repay a creditor. It also shows the Debtor's willingness to waste the Court's time and resources on frivolous filings and delays.

17. The Debtor filed a Chapter 13 Plan [Doc. No. 9] (the "Plan") on March 12, 2019. The Debtor subsequently amended his plan on May 6, 2019 [Doc. No. 26] (the "Amended Plan"). In his Amended Plan, the Debtor proposes to make payments equal to approximately

---

[1] Although the Debtor's case was filed in March and his petition, Schedules and related materials are dated March 12, 2019, his *Declaration of Electronic Filing* [Doc. No. 3] is signed and dated January 23, 2019, nearly two months *prior* to the Petition Date. While it is unclear whether the declaration is even effective where it predates the signatures to which it attests, it does speak to the Debtor's scheme to falsely label parental gifts as loans on the eve of his bankruptcy filing.

[2] Pursuant to the terms of the Agreement, the Debtor would actually be liable to Srivastava for the amount of this gift in full, for an additional $219,167.24. The Debtor also, of course, is in further violation of the Agreement for failing to disclose these gifts.

6

27%. Setting aside the Debtor's baseless assertion that Srivastava's claim is subject to a bona fide dispute, the distribution to her over the 60-month term of the Plan would amount to approximately $44,744. At the same time, the Debtor proposes to pay $59,613.49 to his parents. Absent the purported loan from his parents, the distribution to Srivastava would be about $104,357.49. If the Debtor's contributions to savings on the backs of his creditors were eliminated, together with spending on frivolous legal disputes, that distribution would be increased to 100%, with more than $110,000 remaining at the end of the five-year Plan. The Debtor has made every effort to gerrymander his bankruptcy in such a way as to improperly limit payments to Srivastava. Srivastava is filing an objection to the Plan concurrently herewith.

### Debtor's Case Must be Dismissed for Cause

18. Section 109 of the Bankruptcy Code provides, in pertinent part:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $394,725 and noncontingent, liquidated, secured debts of less than $1,184,200…may be a debtor under chapter 13 of this title.

11 U.S.C. § 109(e). Section 109(e) establishes a debt ceiling for chapter 13 eligibility. As set forth above, the Debtor has mischaracterized and undervalued Srivastava's claims, deliberately omitting interest and attorneys' fees owed pursuant to statute, agreement and applicable non-bankruptcy law. The Debtor has also systematically failed to report his significant increases in income, which would add to his obligations under the Agreement. Coincidentally, the Debtor's total scheduled unsecured claims amount to $390,230.24—just $4,494.76 below the statutory limit.

19. The claims bar date in this case passed on May 21, 2019. Unsecured claims against the Debtor total $394,345.47—just $379.53 below the cap. Srivastava's claim, however, includes interest and attorneys' fees, as well as additional property settlement obligations based

7

on the Debtor's increased but undisclosed income. Srivastava has filed concurrently herewith an amended claim in the amount of $290,749.17. Based solely upon the income disclosed in schedules alone, Srivastava's claim has been increased by at least $126,249.17, putting the Debtor more than $125,000 *over* the statutory cap. More importantly, the Debtor's obligations to Srivastava under the Agreement extend throughout his employment for all future years. Therefore, in order to fully value Srivastava's claim, an estimate of all future increases would also need to be included. The Debtor has failed to account for any of his material obligations under the Agreement.

20. Srivastava's claim indicates that it includes additional interest and attorneys' fees which must be added to the total of the claim. Srivastava expects to further her claim to include additional amounts for the Debtor's increased income, gifts, or inheritance which he failed to previously disclose in violation of his obligations under the Agreement, but is hampered in that process based upon the Debtor's nondisclosure in violation of a court order.

21. Notwithstanding the Debtor's transparent gerrymandering to avoid the debt ceiling imposed by section 109(e) of the Bankruptcy Code, the Debtor's disclosed debts clearly exceed the cap. Moreover, the Court is not limited to the Debtor's schedules in determining eligibility for chapter 13 relief. *See, e.g.*, *In re Lucoski*, 126 B.R. 332, 336 (S.D. Ind. 1991). Likewise, the Court should not be limited by the Debtor's spurious characterization of any debt, including Srivastava's, as contingent, unliquidated or disputed. *See id.* at 341–42.

22. Even were the Debtor eligible to seek chapter 13 relief, ample cause exists for dismissal. Section 1307 of the Bankruptcy Code provides:

> …on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a cause under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause…

11 U.S.C. § 1307(c). Although several bases are enumerated in section 1307, such list is not exhaustive and "cause" is not defined therein. *See id.* Accordingly, caselaw has developed to support dismissal on the basis of bad faith by the debtor. *See, e.g.*, *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365 (2007). In *Marrama*, the Supreme Court reviewed collected cases from Courts of Appeals and concluded "the federal courts are virtually unanimous that prepetition bad-faith conduct may cause a forfeiture of any right to proceed with a Chapter 13 case." *Id.* at 367; *see also In re Love*, 957 F.2d 1350 (7th Cir. 1992) (holding lack of good faith sufficient cause for dismissal); *In re Gros*, 173 B.R. 774 (Bankr. M.D. Fla. 1994) (ruling bad faith is cause for dismissal).

23. Numerous courts reviewing debtors' conduct employ multifactor tests. The United States Court of Appeals for the Sixth Circuit identified typical factors in *In re Condon*, 358 B.R. 317, 324 (6th Cir. 2007): (a) the debtor's income; (b) the debtor's living expenses; (c) the debtor's attorney's fees; (d) the expected duration of the plan; (e) the debtor's sincerity in petitioning for chapter 13 relief; (f) the debtor's potential for future earning; (g) any special circumstances (such as, for instance, high medical expenses); (h) any prior filings; (i) the circumstances under which the debt was incurred; (j) the amount of payment offered as an indication of the debtor's sincerity to repay the debt; (k) the burden administration would place on the trustee; and (l) the policy of construing relief in favor of debtor.

24. Although not all of these factors are relevant in every case, many are implicated here. For example, the Debtor enjoys high income, and has potential for future increases based upon increases he has already enjoyed (but failed to disclose prior to the Petition Date). The Debtor's expenses are artificially inflated and also provide for a luxurious lifestyle. Attorneys' fees incurred and proposed to be paid by the Debtor are exorbitant and based solely on the

9

Debtor's repeated, continuous, and frivolous litigation of previously agreed-to and final court orders in Texas.

25. The Debtor lacks sincerity in seeking chapter 13 relief, and has not proposed a sincere plan to repay his debt to Srivastava. On the contrary, by understating his income, misrepresenting past increases in income, inflating his expenses, and diluting Srivastava's distribution by including his parents' gifts as claims, the Debtor has dramatically limited Srivastava's recovery in a bad faith effort to avoid his otherwise nondischargeable obligations. If the Debtor were to properly apply all of his income in excess of *reasonable* expenses, and were to exclude insider repayments to his parents for prior gifts, he would be able to make payments to Srivastava totaling more than $275,000. On the contrary, the Debtor has proposed to pay Srivastava less than $45,000.

26. Courts within this District have refined the analysis. Incidental to its analysis and application of the totality of the circumstances test for bad faith, the Court recognized dismissal as the appropriate remedy in a two-party dispute such as the one between the Debtor and Srivastava. *See In re Virden*, 279 B.R. 401, 410 (Bankr. D. Mass. 2002) ("This is a two party dispute and it is clear that the Debtor's sole motivation in filing this Chapter 13 case was to avoid payment of this singular debt."). The Court also was influenced by the lack of other legitimate debts. *See id.* Here, the Debtor is in fact burdened only by his obligations to Srivastava. Similar to the debtor in the *Virden* case, "the degree to which the Debtor is truly burdened by this debt is doubtful." *Id.* Indeed, the Debtor appears fully able, but unwilling, to repay the debt in full and has not accumulated any other meaningful unsecured debt from which he seeks relief. As in *Virden*

> …the Debtor's filing was motivated by a desire to avoid payment to [the creditor], rather than by any inability to meet his liabilities, such as they

10

Document Page 11 of 14

>    are…the Debtor is not making an honest effort to repay his debt to the best
>    of his ability, and this constitutes bad faith sufficient to dismiss the case.

*Id.* at 410–11.

27. The Court has since clarified that the essential determination of bad faith is "whether the debtor is attempting to thwart his creditors, or is making an honest effort to repay them to the best of his ability." *In re Fleury*, 294 B.R. 1, 6 (Bankr. D. Mass. 2003) (citing *Virden*). Here, the Debtor himself proposed, four years ago, a property division, which was approved by the Texas court as a final judgment. Waiting until the appeal period had long expired, the Debtor then began a frivolous series of attacks on the judgment. In every instance—*on at least nine separate occasions*—the Texas courts have upheld the Agreement. When the courts finally awarded garnishments to Srivastava, the Debtor filed his bankruptcy petition. Not content to attempt to avoid his legitimate obligations, the Debtor went on to include the completely fictitious claim of his parents for gifts given over the course of years and documented only by a purported promissory note signed—*after all of the gifts were already given without any condition or contingency*—on the eve of bankruptcy.

28. This is precisely the conduct proscribed by this Court. *See Fleury*, 294 B.R. at 6, 7; *Virden*, 279 B.R. at 407. As found by the Court in the *Fleury* case, "The filing of bankruptcy solely to thwart a creditor claim rather than making a honest effort to pay debts is bad faith." *Fleury*, 294 B.R. at 8. Subsequent decisions by this Court have followed this standard. *See, e.g.*, *In re Haque*, 334 B.R. 486, 489–90 (Bankr. D. Mass. 2005) (holding that filing to avoid a single debt, defeat state court judgments, or pursue two-party dispute constitutes bad faith).

WHEREFORE, for all of the foregoing reasons, Srivastava requests that this Honorable Court enter an order: (i) allowing the Motion; (ii) dismissing the Debtor's case; and (iii) granting Srivastava such other and further relief as just and necessary.

        Respectfully submitted,

        GITA SRIVASTAVA,

        By her attorneys,

        /s/ Alex F. Mattera
        Alex F. Mattera, BBO No. 641760
        Partridge Snow & Hahn LLP
        30 Federal Street
        Boston, MA 02110
        Telephone: (857) 214-3118
        Facsimile: (617) 272-7910
        Email: amattera@psh.com

Dated: June 6, 2019

IN RE: Chapter 13 Andrew Greenhut　　　　　　　　　　　　　Case No. 19-10782-FJB

# **CERTIFICATE OF SERVICE**

    I hereby certify that on this 6th day of June, 2019, I caused to be served the within *Motion of Creditor Gita Srivastava to Dismiss Debtor's Case* upon the following participants electronically via the CM/ECF System:

| | |
|---|---|
| Richard N. Gottlieb, Esq. | John Fitzgerald, Esq., U.S. Trustee |
| Law Offices of Richard N. Gottlieb | Office of the U.S. Trustee |
| Ten Tremont Street | J.W. McCormack Post Office & |
| Suite 11, 3rd Floor | Courthouse |
| Boston, MA  02108 | 5 Post Office Square, 10th Fl., Ste. 1000 |
| | Boston, MA  02109 |
| | |
| Carolyn Bankowski, Trustee | |
| Chapter 12-12 Trustee Boston | |
| P.O. Box 8250 | |
| Boston, MA  02114 | |

and I hereby certify that a copy of the *Motion of Creditor Gita Srivastava to Dismiss Debtor's Case* was served by regular, first class mail, to the following interested parties as set forth below:

| | |
|---|---|
| Andrew Greenhut | Barclays Bank Delaware |
| 21 Kingston Street | Attn:  Correspondence |
| Somerville, MA  02144 | P.O. Box 8801 |
| | Wilmington, DE  19899 |
| | |
| Capital One | Capital One Bank (USA), N.A. |
| Attn:  Bankruptcy | 4515 N. Santa Fe Ave. |
| P.O. Box 30285 | Oklahoma City, OK  73118 |
| Salt Lake City, UT  84130 | |
| | |
| Chase Bank USA, N.A. | Chase Card Services |
| c/o Robertson, Anschutz & Schneid, P.L. | Correspondence Dept. |
| 6409 Congress Avenue, Suite 100 | P.O. Box 15298 |
| Baca Raton, FL  33487 | Wilmington, DE  19850 |
| | |
| Christopher and Andrea Haas | Deborah G Hankinson, Esq. |
| 164R Summer Street | Hankinson, PLLC |
| Arlington, MA  02474 | 750 N. St. Paul Street, Ste. 1800 |
| | Dallas, TX  75201 |

- 2 -

Elan Financial Service
Attn: Bankruptcy
4801 Frederica Street
Owensboro, KY  42301

Gita Srivastava
5439 Edgehollow Place
Dallas, TX  75287

Gloria and Alan Greenhut
1560 45th Street
Brooklyn, NY  11219

Harriet O'Neill, Esq.
Law Office of Harriet O'Neill, PC
919 Congress Avenue, Suite 1400
Austin, TX  78701

Ike Vanden Eykel, Esq.
Koonsfuller, P.C.
1717 McKinney Ave., Suite 1500
Dallas, TX  75202

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA  19101

Israel Suster, Esq.
The Suster Law Group, PLLC
1316 Village Creek Drive, Ste. 500
Plano, TX  75093

Mass. Dept. of Revenue
P.O. Box 9564
Boston, MA  02204

Mass. Dept. of Revenue
Bankruptcy Unit
P.O. Box 9564
Boston, MA  02114-9564

Portfolio Recovery Associates, LLC
P.O. Box 41067
Norfolk, VA  23541

Rick Thompson, Esq.
Kelly, Durham & Pittard L.L.P.
2223 W. Jefferson Boulevard
Dallas, TX  75208

Rtn Federal Credit Union
600 Main Street
Waltham, MA  02452

U.S. Bank NA dba Elan Financial Services
Bankruptcy Department
P.O. Box 108
St. Louis, MO  63166-0108

Wallace B. Jefferson, Esq.
Alexander Dubose Jefferson & Townsend
515 Congress Avenue, Ste. 2350
Austin, TX  78701

*/s/ Alex F. Mattera*
Alex F. Mattera

3577812.1/16306-2

- 2 -