UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

In re

ANDREW GREENHUT,

Debtor.

Chapter 13
Case No. 19-10782-JNF

**OBJECTION OF CREDITOR GITA SRIVASTAVA TO APPLICATION FOR COMPENSATION BY SPECIAL COUNSEL, CHARLES "CHAD" BARUCH**

Gita Srivastava ("Srivastava"), the holder of divorce-related claims against Andrew Greenhut (the "Debtor") and the only significant bona fide claim holder in this case, hereby files this Objection to the *Application by Attorney for the Debtor(s) for Compensation under 11 U.S.C. § 330(a) and MLBR Appendix 1, Rule 13-7(f)(1)* filed by Attorney Charles "Chad" Baruch ("Baruch") [Doc. No. 163] (the "Second Baruch Application"). The Debtor previously filed two successive motions to employ Baruch before finally obtaining authority, and the Court specifically cautioned the Debtor and Baruch that any application for fees was subject to review by the Court and objection by Srivastava. Baruch undertook representation of the Debtor with the clear understanding and risk of nonpayment by the bankruptcy estate. Moreover, Baruch is not bankruptcy counsel and is not being retained as such. Baruch's engagement is manifestly not in the best interest of the Debtor's estate and creditors.

Baruch had also previously submitted a substantially similar application, requiring Srivastava to oppose it, only to withdraw the application as the date for hearing approached.[1]

---

[1] *Application by Attorney for the Debtor(s) for Compensation under 11 U.S.C. § 330(a) and MLBR Appendix 1, Rule 13-7(f)(1)* [Doc. No. 150] (the "First Baruch Application").

Srivastava has been required to review yet another similarly deficient application by Baruch, compare the two Baruch Applications, and file this new Objection, all at significant and needless expense.

In addition, Baruch indicates that he has received at least one postpetition payment from the Debtor on February 25, 2020, immediately after Baruch withdrew the First Baruch Application on February 24, 2020 [Doc. No. 160]. Neither the Debtor nor Baruch obtained Court approval or authority for such payment, which should be disgorged to the estate.

In further support of this Objection, Srivastava represents as follows:

### Introduction

1. The First Baruch Application suffered from block billing, terse descriptions of services, and a narrative reduced to a single sentence describing the services rendered. As such, the First Baruch Application failed to meet even the most liberal of requirements for a fee application under the Bankruptcy Code and the Local Rules of this Court.

2. The First Baruch Application apparently covered only four days during the time period between October 28, 2019, and November 23, 2019. The total amount of fees sought in the First Baruch Application was $12,465, subject to a waiver of amounts in excess of $10,000.

3. The Second Baruch Application covers eight days between February 24, 2020 (the date the First Baruch Application was withdrawn), and March 5, 2020, for a total of $13,050. Although the cover page of the Second Baruch Application indicates that Baruch is seeking payment of $9,450 in fees, it is impossible to understand how that figure was determined, as the Application itself indicates differing amounts due in various places, including $9,939.83, $13,050, $13,539.83, and $10,000.

4. The Second Baruch Application also appears to be an attempt by Baruch to correct some of the deficiencies of the First Baruch Application. Block billing entries are broken up significantly but not completely. On the other hand, the narrative of services contained in Exhibit B is now actually *shorter* than previously, providing even less information. In fact, of the entire 31-page application, Baruch's resume consumes 15 pages. Eliminating the exhibit spacers and the engagement letter leaves very little space indeed for substantive information, frustrating the very purpose of review and consideration of whether such fees were necessary and beneficial to the estate.

5. Even were the Second Baruch Application to be allowed, payment of any approved fees would be inappropriate. The Debtor is already subject to at least *ten* separate rulings requiring him to perform under the terms of his *agreed-upon* divorce settlement with Srivastava, and the Debtor remains in contempt of that agreement. The Debtor remains subject to garnishment and related orders in Texas. Allowing the Debtor to misdirect funds owed to Srivastava to yet another attorney in yet another unfounded lawsuit attacking yet another final judgment is manifestly inequitable. The Debtor's funds (including any funds held in retainer by Baruch or other attorneys) should instead be used to pay the Debtor's court-ordered obligations to Srivastava.

6. Although Baruch styled his fee request as an "Application by attorney for the debtor," Baruch provided no services to the bankruptcy estate. Nevertheless, Baruch is seeking compensation from that estate. Despite not providing any services or benefit to the Debtor's creditors, payment to Baruch would penalize those creditors—the beneficiaries of and interest holders in the estate—by reducing payments to them.

7. The Debtor elected to file his bankruptcy petition while the Texas litigation, in which Baruch represents the Debtor, was pending. Any difficulty this creates is entirely Debtor's own making—both by committing funds to Baruch while acting in contempt of court-ordered payments owed to creditor Srivastava, and by the Debtor's choice to file bankruptcy while his own lawsuits in Texas are pending. The Debtor's scheme is a transparent attempt to convert funds belonging to Srivastava to his own use as legal fees for his ongoing frivolous challenges to Texas court orders.

8. The Bankruptcy Court (pursuant to the hearings conducted by Judge Bailey on May 2, 2020, and June 27, 2020) put the Debtor and Baruch on notice that, while Debtor was permitted to engage counsel, *no permission was granted to use funds from the bankruptcy estate to pay for such engagement*. In fact, the Debtor has indicated that Baruch's engagement for the last several years has been funded by Debtor's parents. There is no reason that should change now. Instead, the Debtor would have this Court prejudice creditor Srivastava by directly liquidating funds from the bankruptcy estate that are owed to creditor Srivastava. Any dispute in connection with Srivastava's claims and rights to funds should be resolved in connection with her pending Motion to Dismiss. This Court is entitled to fully evaluate the issues, consider the Motion to Dismiss for bad faith, and then make a determination which will also resolve any question of fees to Baruch.

9. To the extent the Debtor claims this creates a hardship, the hardship is of his own making. He chose to file for bankruptcy mid-stream in the Texas proceedings. The Debtor has argued that, although Baruch provides no bankruptcy services or benefit to the estate, Baruch's engagement is necessary and beneficial to the Debtor personally. Indeed, the Debtor is entitled to engage counsel for his own interests, however, the Debtor is not entitled to exhaust estate assets

4

to pay such counsel. It would be prejudicial and inequitable to allow the Debtor to seek the benefits of bankruptcy protection to stay creditor Srivastava's pending and ongoing efforts in the Texas courts to enforce her judgments against him, while allowing him to use the bankruptcy estate funds to fund his own litigation in Texas. The Debtor may not simultaneously use the bankruptcy stay as both sword and shield.

### Prepetition Divorce and Termination Proceedings

A.   **Divorce and Property Settlement**

10.   The Debtor is a serial litigant who has dragged Srivastava through more than four years of litigation in four courts across two states. After proposing, agreeing to, and obtaining judgment on an agreement for divorce and property division (the "Agreed Divorce Property Judgment"), the Debtor later changed his mind and decided to collaterally attack the final judgment that he had not timely appealed. The Debtor's bankruptcy filing, coming contemporaneously with his continued efforts to challenge Texas divorce court orders, is merely the latest attempt to evade long-standing court orders. The Debtor has spent the last three years squandering the money he owes Srivastava on frivolous litigation attacking the Agreed Divorce Property Judgment. Without exception, every Texas court examining the issue has rejected his attacks.

11.   The Debtor initially followed the Agreed Divorce Property Judgment. After five months, however, he stopped making payments and decided to stop complying with this and other court orders. The Debtor then spent the next three and a half years refusing to comply with the property division he himself requested. He stands in violation of at least 10 Texas court orders.

B.   **Enforcement Proceedings**

12.   In July 2016, due to the Debtor's absolute refusal to comply with orders of the Texas Trial Court, including the Agreed Divorce Property Judgment, Srivastava was forced to file a *Petition for Enforcement of Property Division* in the Texas Trial Court. Both parties appeared with counsel and, after a trial, the court entered judgment against the Debtor on March 30, 2017. Rejecting the Debtor's spurious defenses, the Texas court found ten separate violations of the Agreed Divorce Property Judgment and rendered judgment against the Debtor in the amount of $38,000, plus fees and interest. The Texas court even ordered the Debtor to pay Srivastava's attorneys' fees. The Debtor still refused to pay.

13.   In August 2018, to effectuate the March 2017 enforcement judgment, Srivastava was forced to file three separate garnishment actions against the Debtor in Texas. Srivastava won each action, obtaining orders against the Debtor from October through November 2018. Nevertheless, the Debtor continued his pattern of refusing to accept the Texas courts' rulings and filed a motion for new trial in the garnishment cases. The Texas court denied his motions on February 6, 2019.

14.   Once again, the Debtor failed to file any appeal. Although all of the garnishment orders remain in effect, prior to his bankruptcy filing, the Debtor refused to pay or to comply with any such orders. Instead, the Debtor devoted his funds to engaging additional attorneys to prosecute ever more spurious claims and attacks on final orders.

15.   After failing to achieve his desired results in more than 10 proceedings in Texas courts over three years of frivolous litigation, the Debtor filed his bankruptcy petition in Massachusetts in a last-ditch effort to escape the effects of his knowing and voluntary actions in Texas.

**C.    Termination of Debtor's Parental Rights**

16.    The case regarding the final and irrevocable termination of the Debtor's parental rights in connection with Srivastava's child (the "Termination Case") is unrelated to the bankruptcy: it is a separate cause of action from the parties' divorce case and Agreed Divorce Property Judgment which is at issue in the bankruptcy. The Termination Case is progressing at the Texas Supreme Court, with briefing on the merits just recently completed in November 2019. The Termination Case involves issues of special importance to the State of Texas, which has written an *amicus* brief in support of Srivastava. The Debtor's Texas counsel has agreed that bankruptcy issues do not affect the Termination Case, and supported a motion in Texas to reinstate the Termination Case notwithstanding this bankruptcy. Baruch himself, in full awareness that he may not be approved or paid through the pending bankruptcy, consented to moving forward. His representation of the Debtor outside the bankruptcy was never conditioned on approval of his fees by the Bankruptcy Court.

17.    The Termination Case involves a four-year-old final judgment of termination of the Debtor's parental rights, entered by the Texas Trial Court on October 21, 2015. The Debtor voluntarily relinquished his parental rights. The Debtor agreed to the Texas Trial Court's order terminating his rights. He never appealed.

18.    Six months later, the Debtor changed his mind, and collaterally attacked the termination. The Debtor's collateral attack was denied by the Texas Bill-of-Review court, which held unequivocally that the Debtor was not the victim of fraud, duress, or coercion, nor had the Debtor ever appealed the order. It once again found him guilty of unclean hands and negligence. The Texas Appeals Court overturned the denial of the termination bill of review on appeal, while expressly holding that the Agreed Divorce Property Judgment was separately enforceable and

affirming the denial of Debtor's bill of review in the Divorce Case. Srivastava has appealed the Texas Appeals Court's reversal of the termination bill of review to the Texas Supreme Court. The State of Texas and several prominent family law practitioners have written Amicus Letters in support of Srivastava. No party has filed any amicus letter in support of the Debtor. Arguments before the Texas Supreme Court were concluded in February, and the case remains under advisement.

### Debtor's Motion to Employ

19. The Debtor filed the *Debtor's Motion to Employ Special Counsel* [Doc. No. 17] (the "First Motion to Employ") on April 2, 2019, seeking authority to employ Baruch to represent the Debtor in the pending Termination Case.

20. On April 16, 2019 [Doc. No. 20], Srivastava objected to the First Motion to Employ, which suffered from numerous procedural failures. For instance, the First Motion to Employ consisted of a single sentence in its entirety—similar to the Baruch Application, which itself contains only a single sentence describing the services rendered. Accordingly, the Court denied the First Motion to Employ.

21. The Debtor filed the *Amended Motion of Debtor to Employ Special Counsel* [Doc. No. 28] (the "Second Motion to Employ") on May 6, 2019, remedying various flaws in the First Motion to Employ, but failing to address Srivastava's concerns regarding payment of additional attorneys' fees while continuing in contempt of Texas court orders to pay Srivastava. Srivastava objected once again to the Second Motion to Employ on May 20, 2019 [Doc. No. 37], raising equitable concerns regarding disposition of funds which rightly were subject to payment to Srivastava pursuant to Texas court orders.

22. The Court allowed the Second Motion to Employ by order dated July 2, 2019 [Doc. No. 81], being careful to clarify **that Baruch's fees, if any, remain subject to Court approval and objection by Srivastava:**

> FOR THE REASONS STATED ON THE RECORD, THE DEBTOR'S APPLICATION TO EMPLOY CHARLES "CHAD" BARUCH AS SPECIAL COUNSEL IS HEREBY GRANTED. SPECIAL COUNSEL'S FEES, OF COURSE, REMAIN SUBJECT TO THE COURT'S LATER DETERMINATION AS TO WHETHER THE FEES SHOULD BE AUTHORIZED AND PAID. MS. SRIVASTAVA'S RIGHT TO OBJECT TO THOSE FEES IS NOT WAIVED BY THE ALLOWANCE OF THIS MOTION.

### The Second Baruch Application

23. The Second Baruch Application seeks approval and payment of fees by the Debtor in the amount of at least $9,450, virtually the highest possible amount allowed without having to submit a Rule 2016 fee application pursuant to Rule 13-7(c) of the Massachusetts Local Bankruptcy Rules ("MLBR").

24. The Second Baruch Application consists of a cover sheet, together with Exhibit 1 (hourly time entries) and Exhibit 2 (a narrative description of services rendered). Neither Exhibit is sufficient to allow proper consideration of the Baruch Application.

25. The First Baruch Application included an Exhibit 1 with only 5 time entries, all of which are block entries with little narrative. The time amounts, while technically in tenths of hours as required, are: 2.60, 6.50, 10.20, 8.00, and 0.40. Each description consists of a single sentence or phrase. Fully 18.20 hours are summarized as "Continued legal research and drafting work on Respondent's Brief on the Merits."

26. Exhibit 1 of the Second Baruch Application marks some improvement over the First Baruch Application, but still includes several block entries for significant amounts.

27. Exhibit 2 is accurately styled a "brief narrative description of services". While Exhibit 2 spends approximately half a page describing background for the termination proceedings (background that would have been appropriate in the First Motion to Employ), the actual description of services rendered in connection with the Baruch Application itself comprises two sentences:

> As the detailed invoice tendered with this application indicates, I spent numerous hours preparing for oral argument. That time consisted principally of rereading the briefs, reviewing the cited case law and statutes, preparing an outline of the argument, and preparing a list of the most likely questions the justices might ask (as well as travel to and from Austin, where the argument took place).

There is no other narrative or description of the services rendered in connection with the Application.

28. Critically, the Second Baruch Application makes no mention of the First Baruch Application. There is no indication of whether additional time was spent in this matter outside of the 12 days covered by the combined Applications. Presumably, Baruch spent additional time on this matter, but has furnished no record of that time. Moreover, the Second Baruch Application does not indicate whether Baruch is reserving the right to charge for or seek approval of any such time, including the time represented by the withdrawn First Baruch Application. In order to meaningfully assess the present request, parties are entitled to understand the total amounts sought or to be sought by Baruch.

29. Lastly, but most importantly, Baruch indicates that the Debtor made at least one postpetition payment to Baruch in the amount of $4,800 on February 25, 2020. This is one day after the First Baruch Application was withdrawn. No application of any kind for Baruch has been approved by this Court. Accordingly, any amounts paid to Baruch are unauthorized and

inappropriate. By the Court's own approval order on the Second Motion to Employ, any fees of Baruch remain subject to the Court's determination.

30. Upon information and belief, Baruch is also holding $20,000 in the form of a retainer. But for the Debtor's filing, Srivastava could have sought to reach the retainer funds pursuant to Texas court orders as part of her enforcement proceedings. ***Instead, the Debtor seeks to enjoy the benefit of his filing by staying enforcement proceedings while at the same time disposing of valuable assets that could fund plan payments to Srivastava.*** Moreover, it is unclear from the Second Baruch Application whether Baruch even intends to apply the retainer, or whether he expects the Debtor to affirmatively pay any award in addition to the retained funds.

31. Debtor is a serial litigant who is no stranger to the courts and has already dragged his former wife and creditor Srivastava through four years of litigation. The Debtor's bankruptcy filing, coming contemporaneously with his continued efforts to challenge Texas divorce court orders, is merely the latest attempt to evade long-standing court orders. The Debtor has spent the last three years spending the money he owes Srivastava on frivolous litigation attacking the agreed divorce judgment. Texas courts have rejected his attacks, as should this Court. The Debtor's retention of Baruch as counsel arises from the Debtor's own refusal to abide by judgments to which he previously agreed in the Texas courts. Further exhausting assets which should have long ago been paid to Srivastava is not an appropriate use of the Debtor's estate.

32. Lastly, Texas provides no absolute right to counsel for civil litigants. The employment of counsel is a privilege therefore, not a right, and moreover a privilege for which Srivastava should not bear the expense. While Srivastava does not, in principle, oppose the employment of counsel to assist the Debtor in the pending Texas proceedings, she does expressly

11

payment of estate assets to such counsel, especially in light of the repeated and failed past collateral attacks of the Debtor.

33. Equity demands that the Debtor not be emboldened to engage additional counsel in connection with further collateral attacks on final judgments, including the Agreed Divorce Property Judgment approving his proposed property settlement, all while the bankruptcy stay prevents Srivastava from moving forward on her own rights to collect on final judgments against him. Srivastava, as the Debtor's only legitimate creditor of any consequence, should not be expected to bear the expense of yet another frivolous challenge to any of the ten orders previously defeating the Debtor's repeated attempts.

34. In closing, the First Baruch Application required the careful review and objection by Srivastava, only to be withdrawn without hearing. The Second Baruch Application required additional close review and another objection. Srivastava has incurred significant expense associated with Baruch's on-again, off-again employment and applications for compensation. To the extent the Second Baruch Application is similarly withdrawn, the fee requests should be disallowed with prejudice.

WHEREFORE, for all of the foregoing reasons, Srivastava requests that the Court enter an order: (i) sustaining this Objection; (ii) denying the Second Baruch Application; and (iii) granting Srivastava such other and further relief as just and necessary.

    Respectfully submitted,

    GITA SRIVASTAVA,

    By her attorneys,

    /s/ Alex F. Mattera
    Alex F. Mattera, BBO No. 641760
    Partridge Snow & Hahn LLP
    30 Federal Street

        Boston, MA 02110
        Telephone: (857) 214-3118
        Facsimile: (617) 272-7910
        Email: amattera@psh.com

Dated: April 15, 2020

### CERTIFICATE OF SERVICE

 I, Alex F. Mattera, hereby certify that on the 15th day of April 2020 I caused to be served a copy of the above pleading on all parties registered for electronic service through the CM/ECF system. In addition, a copy was served by first-class mail upon:

 Charles Baruch, Esq.
 Johnston Tobey Baruch, P.C.
 12377 Merit Drive, Suite 880
 Dallas, TX 75251

        /s/ Alex F. Mattera
        Alex F. Mattera