UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

| | |
|---|---|
| In re<br><br>ANDREW GREENHUT,<br><br>Debtor. | Chapter 13<br>Case No. 19-10782-JNF |

**MOTION OF CREDITOR GITA SRIVASTAVA FOR**
**RELIEF FROM THE AUTOMATIC STAY**

Gita Srivastava ("Srivastava"), the holder of divorce-related claims against Andrew Greenhut (the "Debtor") and the only significant bona fide claim holder in this case, hereby files her Motion for relief from the automatic stay imposed by 11 U.S.C. section 362. Srivastava seeks relief in order to simplify and resolve issues with respect to the agreed divorce judgment entered by the Texas trial court that forms the basis of Debtor's obligations to Srivastava, including the disposition of the Debtor's appeal of the agreed divorce judgment pending in the Texas Supreme Court pursuant to the agreement of the parties' appellate counsel, and the determination of Srivastava's claim against the Debtor pursuant to the divorce order entered by the Texas trial court. On June 29, 2020, Srivastava, through counsel, conferred with the Debtor to determine whether he would assent to the relief requested herein. Debtor's bankruptcy counsel indicated that he would not assent to relief for the purposes of determining Srivastava's claim, and advised that he would obtain an answer from the Debtor regarding relief to resolve the pending appeal (notwithstanding that Debtor's appellate counsel already agreed to same). As of the date of this motion, Debtor's bankruptcy counsel has not responded with his client's position.

In support of this Motion, Srivastava represents as follows:

**Factual Background**

1.   On March 12, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 13 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Massachusetts (Eastern Division).

2.   The Debtor's bankruptcy filing arises out of his divorce from Srivastava, and his ongoing attempts to escape the final judgment entered—at his demand—by the trial court in Texas. The litigation in Texas has been complex, protracted, and involved. There are eight separate causes of action—all in the Texas—all of which revolve around the determination and enforcement of Srivastava's claims against the Debtor.[1]

3.   The divorce proceeding, *In the Matter of the Marriage of Gita Srivastava and Andrew D. Greenhut and in the Interest of D.S., a Child*, was filed in the 470th Judicial District Court of Collin County, Texas (the "Texas Trial Court"), Docket No. 470-55383-2015 (the "Divorce Case"), on September 25, 2015. On November 25, 2015, the Texas Trial Court entered the *Agreed Final Decree of Divorce* (the "Agreed Divorce Judgment"), signed by both parties, approving the property division proposed by the Debtor.

4.   Prior to the entry of the Agreed Divorce Judgment, the Texas Trial Court had also entered an *Agreed Order on Motion to Seal Court Records* (the "Seal Order") on October 15, 2015.  The Seal Order ordered that all documents in the parties' divorce matter be sealed, and not opened or released except by further court order.

5.   Pursuant to applicable Texas law, the deadline for any appeal of the Agreed Divorce Judgment was 30 days after entry; i.e., December 25, 2015. The Debtor did not file any

---

[1] Srivastava previously filed her *Statement* at the direction of the Court on December 4, 2019 [Doc. No. 144] (the "Statement"). The Statement sets forth the procedural history of the Texas matters in more detail, and Srivastava incorporates the Statement herein, including the *Exhibit A* to the Statement, which presents a flowchart of the Texas litigation. The procedural history set forth in this Motion is largely excerpted from the Statement.

2

appeal. Instead, almost a year after the deadline ran, the Debtor filed a collateral attack on the Agreed Divorce Judgment.

6. Thus began a years-long, frivolous series of attacks wherein—without exception—the Debtor lost every challenge to the Agreed Divorce Judgment. The Debtor collaterally attacked the judgment in the Texas Trial Court, appealed his loss to the Texas appeals court (where he lost again), and filed numerous challenges to the enforcement of the judgment, also in the Texas Trial Court. The Debtor's final, hail-Mary attack on the Agreed Divorce Judgment came in the form of an appeal to the Texas Supreme Court. In all, the Debtor fought—and lost—challenges to the judgment on *nine* separate occasions.

7. Most recently, the Debtor has lost his attacks on the parties' related case regarding the termination of his parental rights, which was also before the Texas Supreme Court. Now that the related litigation has been disposed of by a unanimous decision against the Debtor, the Debtor's appellate counsel has indicated that the Debtor consents to the dismissal of his pending appeal before the Texas Supreme Court in connection with the Agreed Divorce Judgment. Although all counsel to the appeal agree upon dismissal, that case may not be dismissed absent relief from the automatic stay in the Debtor's bankruptcy proceeding. As stated above, the Debtor's bankruptcy counsel has not responded to counsel's request for an assent to relief from stay for that limited purpose.

8. The Texas Trial Court is no stranger to the facts of this dispute or the Debtor's conduct. Realizing this, the Debtor has moved this two-party dispute to the Massachusetts Bankruptcy Court in yet another effort to retry the same issues he has repeatedly lost.

9.	The Agreed Divorce Judgment sets forth the Debtor's obligations to Srivastava.[2] It includes a base amount to be paid over time (the "Base Amount"), and additional payments due to Srivastava arising out of the Debtor's future income. The Base Amount is comprised of the principal sum of $210,000, payable in equal monthly installments of $3,500. Currently, $164,500 of the Base Amount remains outstanding.

10.	The Agreed Divorce Judgment also provides for additional payment by the Debtor calculated upon, *inter alia*, any increase in income event:

> THE PARTIES AGREE AND IT IS THEREFORE ORDERED that if, after the date this Order is signed by the Court up until the date that ANDREW D. GREENHUT dies, Husband obtains a windfall event, such as his receiving an inheritance, a large increase in income, or a large gift, any of which are in excess of $30,000.00 per year or more, Husband shall transfer all of his interest or all of such amount into an account at the discretion of and as directed by Wife for the child, D.S., or in a trust for the benefit of the child, D.S.. The parties stipulate that the Husband's current income at the time this order is entered is $140,000.00 per year…THE PARTIES AGREE AND IT IS THEREFORE ORDERED that Husband shall inform Wife in writing each year on or before December 31st of each year, beginning in the year 2016 (i.e., on December 31, 2016), of any inheritance, increase in income, or gift he received (other than his $140,000.00 salary) that year in excess of $30,000.00…

11.	The Agreement does not define "windfall event", but does include several illustrative examples, including increases in income, gifts, and inheritances. This appears to be an attempt by the parties to capture the universe of possible sources of additional property to the Debtor, all of which are subject to the Agreed Divorce Judgment.

12.	Naturally, no party may be aware of any windfall event absent self-reporting by the Debtor. Accordingly, the Agreed Divorce Judgment imposes an affirmative duty upon the Debtor to disclose any such increase. Unfortunately, he routinely has failed to do so.

---

[2] As a consequence of the Seal Order, the parties are not permitted to file documents from the Divorce Case as exhibits.

13. In fact, the Texas Trial Court specifically found violations as early as 2016 of the Debtor's duty to disclose. The Texas Trial Court stated that his failure to make the required reports constituted a misrepresentation: "So if any of those things did happen, a report needs to be sent. Failing to send a report is a representation that those things did not happen." Transcript of: "Enforcement Hearing and Motion to Compel" Supplemental Reporter's Record, Volume 4 Of 5 Volumes, Trial Court Cause No. 470-55383-2015, In The Matter Of The Marriage Of Gita Srivastava And Andrew D. Greenhut at 48, lines 6–17.

14. In short, the Debtor refused to comply with the Agreed Divorce Judgment, and did not disclose increases in his income. Only upon the filing of suit by Srivastava to enforce the agreement and his appearance at trial before the Texas Trial Court was the Debtor forced to address his failure. From that time until his bankruptcy filing, the Debtor continued to conceal his true income and assets in an effort to evade the Agreed Divorce Judgment. These concealments constitute misrepresentations by Debtor pursuant to the Texas Trial Court's ruling and order.

15. Srivastava only learned of the Debtor's increased income or other receipts by way of the Debtor's schedules of assets and liabilities (collectively, the "Schedules") filed in this case. The Debtor's Schedules, in answer to questions 4 and 5 on the Statement of Financial Affairs, reflect income in 2017 in the amount of $196,212.51 and 2018 in the amount of $210,036.66. Presumably, there are additional years (at least 2016) and/or sources for which the Debtor received excess income, gifts, or inheritance but did not disclose them on his Schedules or elsewhere. Based on these two years alone, the Debtor is liable to Srivastava for at least an additional $126,249.17, together with applicable interest.

16. In his Schedules, the Debtor also indicated that he was employed at LogMeIn. The Debtor indicated, in response to Question 13 on Schedule I, that he did not expect any changes to his income in the next year.

17. In truth, however, prior to the Petition Date the Debtor had accepted an offer to work at DataRobot, Inc., at a significantly higher salary. The Debtor did not disclose Such increase in salary affects the Debtor's obligations under both the Agreed Divorce Judgment and the Bankruptcy Code. The Debtor had a duty—under *both*—to disclose it.

18. The Debtor was aware on the Petition Date that he expected a considerable change in his financial circumstances immediately following his filing. He began work at DataRobot, Inc., less than two weeks after filing. He had accepted the position months before filing. He signed his petition and Schedules under the pains and penalties of perjury knowing that they were misleading and inaccurate. Notwithstanding such knowledge, the Debtor failed to make any amendment to his Schedules or his chapter 13 plan for more than a year, and then only upon discovery and exposure of his falsehood by Srivastava.

19. Srivastava discovered the Debtor's change in employment only as a consequence of her deposing him in February 2020—nearly a year *after* the change occurred. The Debtor waited only until his concealment was discovered to disclose his increased income. Had Srivastava not deposed him, the Debtor would likely have followed his existing pattern of concealment to avoid disclosing adverse financial information to the Bankruptcy Court, the Texas Trial Court, and to Srivastava.

20. The Debtor has consistently flouted his duty to disclose, and has never made any compliant disclosure whatsoever of his increased income, gifts received, inheritance, or other windfall event.

21. The Debtor failed and refused to disclose accurate information until an enforcement suit by Srivastava. The Debtor then failed and refused to disclose subsequent financial information until his bankruptcy filing. Following his bankruptcy filing, the Debtor *still* failed and refused to disclose accurate financial information until it was discovered by Srivastava during his deposition.

22. The Debtor has demonstrated a clear and irrefutable pattern of getting away with his behavior and conduct unless and until caught by Srivastava or a court. In no instance has the Debtor voluntarily disclosed and complied with the Agreed Divorce Judgment.

23. The Texas Trial Court additionally awarded Srivastava interest at the rate of five percent per annum and attorneys' fees in the Divorce Case in the context of Srivastava's enforcement efforts, which the Debtor challenged and lost. Because interest is awardable by the Texas Trial Court rather than provided for in the parties' agreement, it is impossible to calculate an interest amount absent further finding of the Texas Trial Court, which has been stayed by the Debtor's bankruptcy filing.

24. Srivastava's prepetition claims, *based upon the Debtor's own admissions and filings under the pains and penalties of perjury*, amount to at least $290,749.17, exclusive of interest and attorneys' fees. Furthermore, given the obligation of the Debtor to disclose and turn over excess income or windfall receipts *through the end of his life*, it is necessarily difficult to quantify the additional amounts to be included in Srivastava's claim. Proper valuation of Srivastava's claims therefore requires relief from the automatic stay to allow the parties to return to the Texas Trial Court, thus permitting the proper court to address penalties, interest, attorneys' fees, and other awards.

25. With appellate counsels' unanimous agreement to dismiss the last pending appeal, the Agreed Divorce Judgment is now final and unassailable. It is the law of the case between these parties. Accordingly, Srivastava's claim may now be determined by the Texas Trial Court with specificity and finality. The Texas Trial Court, which is not subject to the Seal Order and may review all necessary documents and testimony, remains the appropriate court to make that determination. Calculation of Srivastava's claim requires application of Texas divorce law, interpretation of a Texas agreement approved by a Texas court, and the application and interpretation of specific findings by the Texas Trial Court in connection with the enforcement orders and attorneys' fee awards to Srivastava.

26. Srivastava is seeking the determination of the amount of her claim, not to actually enforce any award or order of the Texas Trial Court. Her request is therefore analogous to any number of similar disputes, such as personal injury claims, contract disputes, and even traditional divorce property division cases. As with such cases, Srivastava proposes only to obtain, not collect, judgment, and then to return to the Bankruptcy Court for disposition of her claims under the Bankruptcy Code.

27. Courts have granted relief from stay to allow divorce litigants to return to state court to resolve litigation, including determination of claims, before returning to Bankruptcy Court for treatment of such claims. *See, e.g.*, *In re Guzman*, 513 B.R. 202 (Bankr. D.P.R. 2014) (finding cause to lift stay to allow state court to adjudicate property division); *see also In re Mac Donald*, 755 F.2d 715, 717 (9th Cir. 1985) ("It is appropriate for bankruptcy courts to avoid incursions into family law matters 'out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters.'") (citations omitted); *In re Busch*, 294 B.R. 137, 141–43 (10th Cir. BAP 2003) (lifting stay and deferring to

state court to resolve state law issues); *In re Johnson*, 210 B.R. 1004, 1005 (Bankr. W.D. Tenn. 1997) (applying *Rooker-Feldman* doctrine to prevent determination by bankruptcy court of debtor's objection to ex-spouse's claim and granting relief from stay). In the *Guzman* case, the court considered that the civil case had been pending before the state court for nearly a year prepetition, that disposition of the case would result in partial resolution of the parties' dispute, would not prejudice the creditors or other interested parties, and would promote judicial economy. *See Guzman*, 513 B.R. at 209.

28. The factors considered in the *Guzman* case overwhelming favor Srivastava's request for relief. Here, the civil case has been pending for nearly five years. The underlying state court has extensive history and experience with the facts and evidence. Relief from stay would allow Debtor's Texas appeal to be dismissed and the claim to be resolved, both of which would vastly resolve the largest disputes between the parties. There would be no prejudice to the Debtor or other creditors, as Srivastava's claim must be determined by one court or another. Judicial economy could be achieved in no better way than by allowing the court that has handled this matter for half a decade to swiftly conclude it. *See id.* Following the determination of Srivastava's claim, the parties could then fruitfully return to this Court to determine the remaining bankruptcy issues in the case. *See, e.g.*, *In re Pidgeon*, 155 B.R. 24, 26 (Bankr. D.N.H. 1993).

### Certification of Compliance

29. Pursuant to Rules 9013(1)(b) and 13-16-1(a)(1) of the Massachusetts Local Bankruptcy Rules, on June 29, 2020, the undersigned contacted the Debtor's counsel by telephone to confer regarding the matters raised in the above pleading. Despite discussions with counsel to the Debtor, the Debtor has not responded with respect to relief from the automatic

9

12245953.1.1.1

stay to dismiss the pending appeal and has indicated objection to relief to interpret the Agreed Divorce Judgment to determine Srivastava's claim.

WHEREFORE, for all of the foregoing reasons, Srivastava requests that the Court enter an order: (i) granting this Motion; (ii) lifting the automatic stay to allow the parties to return to Texas to dispose of the Texas Supreme Court matter and resolve Srivastava's claim; and (iii) granting Srivastava such other and further relief as just and necessary.

    Respectfully submitted,

    GITA SRIVASTAVA,

    By her attorneys,

    /s/  Alex F. Mattera
    Alex F. Mattera, BBO No. 641760
    Pierce Atwood LLP
    100 Summer Street
    Boston, MA  02110
    Telephone:  (617) 488-8112
    Email:     amattera@pierceatwood.com

Dated:  July 31, 2020

12245953.1.1.1