UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

In re:

ANDREW GREENHUT,

    Debtor.

Chapter 13
Case No. 19-10782-JEB

**MEMORANDUM OF DECISION**

This matter came before the Court on the Motion of Creditor Gita Srivastava to Dismiss Debtor's Case ("Motion"). Pursuant to the Motion, Gita Srivastava seeks dismissal of the Chapter 13 case filed by the within debtor, Andrew Greenhut. For the reasons set forth in this Memorandum, the Court finds that cause exists under Section 1307 to dismiss the case since Mr. Greenhut filed this bankruptcy in bad faith.

**Background**

The debtor, Mr. Greenhut, attended college and graduate school at the Massachusetts Institute for Technology, obtaining a bachelor's degree and a master's degree. Mr. Greenhut married Ms. Srivastava and the couple lived in Texas for most of the marriage. During the marriage, Mr. Greenhut was estranged from his parents, Alan Greenhut and Gloria Greenhut.

In 2015, Mr. Greenhut and Ms. Srivastava commenced divorce proceedings in the Texas state courts. On November 25, 2015, the Texas trial court entered a divorce judgment, assented to by both Mr. Greenhut and Ms. Srivastava. The divorce judgment provided for the distribution of the marital assets. In a related proceeding that was separated from the divorce proceeding, the Texas court entered an order terminating Mr. Greenhut's parental rights with respect to the minor child of the parties. Neither party appealed the divorce judgment or the order terminating the

parental rights.

Because of the sensitive personal information involved, the Texas court sealed the records of the actions. The parties stipulated in the pretrial memorandum to certain facts from the divorce judgment. In addition, the agreed upon exhibits included subsequent orders of the Texas courts in the litigation.

Under the divorce judgment, the parties agreed to certain obligations and divisions of property. Among other obligations, Mr. Greenhut agreed to pay Ms. Srivastava a property settlement in the amount of $210,000, in equal monthly installments of $3,500. In addition, Mr. Greenhut agreed to make additional payments to Ms. Srivastava based on future events. The judgment provided that:

> THE PARTIES AGREE AND IT IS THEREFORE ORDERED that if, after the date this [Divorce Judgment] is signed by the Court up until the date that ANDREW D. GREENHUT dies, Husband obtains a windfall event, such as his receiving an inheritance, a large increase in income, or a large gift, any of which are in excess of $30,000.00 per year or more, Husband shall transfer all of his interest or all of such amount into an account at the discretion of and as directed by Wife for the child, D.S., or in a trust for the benefit of the child, D.S.. The parties stipulate that the Husband's current income at the time this order is entered is $140,000.00 per year . . . THE PARTIES AGREE AND IT IS THEREFORE ORDERED that Husband shall inform Wife in writing each year on or before December 31st of each year, beginning in the year 2016 (i.e. on December 31, 2016), of any inheritance, increase in income, or gift he received (other than his $140,000.00 salary) that year in excess of $30,000.00 . . .

Mr. Greenhut initially made five monthly payments of $3,500, totaling $17,500, toward the property settlement. He ceased making the required payments after June 1, 2016.

Commencing in April 2016, Mr. Greenhut filed petitions for bills of review in the Texas court, seeking to collaterally attack the order terminating his parental rights and the divorce judgment. After trial, the petitions were denied. Mr. Greenhut then appealed the decisions. In

2

2018, the Texas intermediate appellate court reversed the trial court decision regarding the termination of his parental rights, finding that the original order was void for lack of subject-matter jurisdiction. The appellate court upheld the decision denying the petition with respect to the divorce judgment.

The intermediate appellate decisions were appealed by the parties to the Texas Supreme Court. As of the bankruptcy filing, the appeals to the Texas Supreme Court were pending. During the bankruptcy proceedings, the parties pursued the appeals. On May 8, 2020, the Texas Supreme Court reversed the appellate decision and upheld the dismissal of the petition regarding the termination of Mr. Greenhut's parental rights. On September 4, 2020, Mr. Greenhut withdrew his appeal of the denial of the petition regarding the divorce judgment.

Prior to the bankruptcy, while the appeals were pending, Ms. Srivastava commenced proceedings against Mr. Greenhut to enforce his obligations under the divorce judgment, including the obligation to make monthly property settlement payments. On March 30, 2017, the Texas court entered a judgment ("Enforcement Judgment") in favor of Ms. Srivastava in the amount of $39,061.90. The Enforcement Judgment included $1,061.91 in statutory interest and an additional $15,487.75 in legal fees. On October 29, 2018, and November 26, 2018, Ms. Srivastava obtained three garnishment judgments against Mr. Greenhut's accounts at Bank of America, Fidelity Investments, and TD Ameritrade. As a result of the garnishments, Ms. Srivastava received $59,950.56 in respect of the Enforcement Judgment.

Although he had been estranged from his parents for several years, Mr. Greenhut reached out to them after the divorce. After reconnecting with his parents, Mr. Greenhut sought assistance from them to pay legal bills associated with his appeals in the Texas courts. From April 2016 through October 2018, his parents sent funds to him from time to time. His mother,

Gloria Greenhut, sent checks totaling $155,000 to him. His father, Alan Greenhut, sent checks totaling $56,500. No formal documentation was executed when the checks were sent.

In December 2018, Mr. Greenhut requested that an attorney prepare promissory notes related to the funds sent by his parents. Two notes were prepared dated December 7, 2018, each in the principal amount of $400,000. Each of the notes stated that it covered any future advances and any funds previously sent, which were listed in the attached schedule. The notes were demand notes and provided for interest as of the date the funds were advanced, payable annually on January 1.

Commencing in January 2015, Mr. Greenhut was employed by LogMeIn in Boston, Massachusetts, as a senior data scientist. In late 2018 or early 2019, Mr. Greenhut began interviewing with another Boston firm, DataRobot, Inc. for a new position. On January 18, 2019, Mr. Greenhut received an offer of employment from DataRobot. The offer included a salary of $200,000, a signing bonus of $10,000, and participation in a stock option plan. Mr. Greenhut negotiated with DataRobot to start on March 25, 2019, because he wanted to participate in a contest in Dublin, Ireland in March as part of a team with other employees at LogMeIn.

Five days after receiving the offer from DataRobot, on January 23, 2019, Mr. Greenhut engaged his bankruptcy counsel, Richard Gottlieb. Two days later, on January 25, 2019, Mr. Greenhut accepted the employment offer from DataRobot.

On March 12, 2019, Mr. Greenhut commenced his Chapter 13 bankruptcy case. On the same day his petition was filed, Mr. Greenhut gave notice to LogMeIn that he was leaving the company. Mr. Greenhut started his new job at DataRobot on March 25, 2019.

On the petition date, Mr. Greenhut filed his schedules, statement of affairs, and Chapter 13 plan. In his original Schedule I filed on March 12, 2019, Mr. Greenhut listed his employer as

LogMeIn. Despite the fact that he was due to start a job at DataRobot in two weeks, he answered "no" in response to whether he expected any increase or decrease in income for the coming year. Based on his salary from LogMeIn, he listed gross income of $12,885, payroll deductions of $5,163, and a net income of $7,721. His Schedule J listed expenses of $5,697, noting that the vehicle expense would end in January 2020. Mr. Greenhut did not list any income or expenses for his girlfriend, whom he was living with at the time. The original schedules listed nine creditors, including Ms. Srivastava and his parents. The other creditors included four credit card companies, the lender on his vehicle, and taxing authorities for 2018 taxes.

The initial meeting of creditors was held on May 1, 2019. Although he had been employed by DataRobot for several weeks, Mr. Greenhut did not disclose his new employment or increased income at the meeting.

The Chapter 13 Trustee objected to the original Chapter 13 plan proposed by Mr. Greenhut. On May 6, 2019, Mr. Greenhut filed his first amended Chapter 13 plan, stating that he intended to address the objections by the Chapter 13 Trustee. Mr. Greenhut did not file any amendments to his Schedules at that time. Instead, the first amended plan, similar to the original plan, provided for payments based on his old salary at LogMeIn. Under the first amended plan, Mr. Greenhut proposed to make monthly plan payments of $2,024 a month. After payment of priority claims, Mr. Greenhut proposed the balance would be distributed on a percentage basis to unsecured creditors.

More than a year later, on June 1, 2020, Mr. Greenhut filed a second amended plan. At that time, he also filed amended schedules which for the first time disclosed his employment by DataRobot. Amended Schedule I listed monthly income of $13,666 a month, deductions of $5,715 a month, and a net income of $7,951. The amended Schedule J included expenses of

5

$4,936, including projected expenses of $504 a month for prebirth expenses for a child expected by his fiancée in 6 months and nursery preparation. Although the net available income was $3,015, in Schedule J, Mr. Greenhut listed a number of future expenses upon the birth of the child, including $1,956 for childcare and $625 for a 529 plan. As a result of the additional deductions, Schedule J reflected that Mr. Greenhut's available income would be reduced to $792. Schedule I did not include any income of Mr. Greenhut's fiancée. Based on the amended schedules, the second amended plan provided that the remaining payments would be $3,015 for 6 months, and then $792 for 40 months.

After an objection by the Chapter 13 Trustee and Ms. Srivastava, two months later, on August 5, 2020, Mr. Greenhut filed further amended schedules and a third amended plan. In the amended schedules, Mr. Greenhut included the income and expenses of his fiancée. The amended schedules listed joint monthly income of $12,729 and expenses of $9,906, for monthly net income of $2,823. The third amended plan provided for 45 remaining payments of $2,823.

On June 6, 2019, Ms. Srivastava filed the Motion, seeking to dismiss the case under Section 1307 of the Code. Ms. Srivastava raised several grounds for dismissal, including that Mr. Greenhut had filed the petition in bad faith and was ineligible to file under Chapter 13. Ms. Srivastava argued that the bankruptcy was intended solely to avoid paying the debt to Ms. Srivastava. She contended that Mr. Greenhut faced no financial pressure from creditors and no meaningful non-insider debt. In addition, Ms. Srivastava argued that the payments from his parents were gifts, not loans, and Mr. Greenhut had no obligation to repay the sums.

Mr. Greenhut opposed the Motion. He argued that he filed the petition in good faith because he was facing financial pressures. He disputed that the payments from his parents were gifts, contending that they were loans that he was under pressure to repay. He also noted that he

6

complied with his obligations under the Code, regularly making the payments under the plans he filed and providing information to the Chapter 13 Trustee.

In addition to the Motion, several other related matters were pending. Ms. Srivastava filed objections to the claims by Mr. Greenhut's parents. Mr. Greenhut objected to Ms. Srivastava's amended claim. In addition, Ms. Srivastava filed objections to the plans filed by Mr. Greenhut.

After initial hearings on the matters, the Court determined that it would rule on the Motion before considering the other matters. The Court bifurcated the issues raised in the Motion for trial, considering first the issue of bad faith. The Court held an evidentiary hearing by video on May 11, 2021, and May 12, 2021, on the issue of whether Mr. Greenhut filed the petition in good faith. In addition to the exhibits submitted at the evidentiary hearing, the Court took judicial notice of the pleadings filed in the proceedings.

**Standard of Review**

Under Section 1307(c) of the Bankruptcy Code, a Chapter 13 case may be dismissed for cause. Although not specifically listed in section 1307, the debtor's bad faith in filing the petition is cause for dismissal. *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367, 373 (2007). Courts apply a totality of the circumstances test to determine whether the debtor has acted in good faith. *In re Sullivan*, 326 B.R. 204, 211 (B.A.P. 1st Cir. 2005). The analysis is fact specific and is determined on a case-by-case basis. *In re Gravlin*, No. 17-41714-CJP, 2020 WL 3635579, at *2 (Bankr. D. Mass. Mar. 6, 2020). The factors considered by courts include (i) whether a debtor stated their debts and expenses accurately; (ii) whether a debtor acted with honesty or made misrepresentations in the bankruptcy process; (iii) whether there is unfair manipulation of the Bankruptcy Code; (iv) the type of debt a debtor seeks to discharge; (v) whether that debt, in a

7

Chapter 7 case, would be dischargeable; and (vi) a debtor's "motivation and sincerity" in filing for Chapter 13 bankruptcy. *Sullivan*, 326 B.R. at 212. Both pre-petition and post-petition conduct by the debtor are appropriately considered by the court. *In re Virden*, 279 B.R. 401, 409 (Bankr. D. Mass. 2002). "The bottom line is whether the debtor is attempting to thwart his creditors, or is making an honest effort to repay them to the best of his ability." *Id.*

**Analysis**

After considering the totality of the circumstances and both his pre-petition and post-petition actions, the Court finds that Mr. Greenhut filed the petition in bad faith. The Court finds that Mr. Greenhut filed the petition to avoid his obligations to Ms. Srivastava. He timed his filing to avoid disclosing his increased income, which triggered additional payments to Ms. Srivastava. As more fully discussed below, the Court also finds that Mr. Greenhut was not facing any pressure from other creditors and had no meaningful other non-insider debt. Although the Court finds that the advances by Mr. Greenhut's parents were loans, not gifts, the Court finds that there was no agreement as to interest or repayment terms and no pressure by his parents to repay the loans. In addition, the Court finds that Mr. Greenhut intentionally overstated the amount due to his parents, after causing documents to be created misrepresenting the terms and the amount due.

Mr. Greenhut admitted that he was seeking to postpone payments to Ms. Srivastava during the appeals. In addition, the Court finds that Mr. Greenhut chose to file bankruptcy and orchestrated the timing of his bankruptcy to avoid the disclosure and payment of his increased income to Ms. Srivastava. Under the divorce agreement, Mr. Greenhut was obligated to make additional payments if certain events occurred. If his income increased by more than $30,000 annually, Mr. Greenhut was obligated to pay such amounts to Ms. Srivastava for the benefit of

8

her child. Mr. Greenhut disputes that any sums are due for prior years. He claims that any additional income for prior years was attributable to the exercise of stock options that he was awarded as his separate property in the divorce. Since the Court has deferred ruling on the objection to Ms. Srivastava's claim, the Court does not make any determination as to the amount due to Ms. Srivastava for prior years. But regardless of the disputes, Mr. Greenhut knew that a change of jobs with an increase in salary of more than $30,000 meant that he would owe additional sums.

The Court's findings are supported by the timing of the job offer and the bankruptcy, and the delay of more than 15 months before Mr. Greenhut disclosed the increase in income in amended schedules. On January 18, 2019, Mr. Greenhut received a job offer from DataRobot, for a position paying $200,000 annually, plus a $10,000 signing bonus. The new salary was almost $45,000 more than the salary he was earning at LogMeIn. Mr. Greenhut did not engage his bankruptcy counsel until January 23, 2019, five days after he received the offer. Although Mr. Greenhut claimed that he spoke to potential bankruptcy counsel earlier, he admitted that several of the attorneys advised against filing bankruptcy.

Mr. Greenhut then delayed filing of the bankruptcy for more than six weeks, to coincide with the start of his new job. On the day the petition was filed, March 12, 2019, Mr. Greenhut gave notice to his then employer, LogMeIn. Mr. Greenhut began his new job two weeks later on March 25, 2019. Mr. Greenhut never reflected the potential increase in income on his schedules, nor did he disclose his new job at the Section 341 meeting. Instead, he chose to deliberately hide the new job and the potential increase in his income for more than 15 months, until finally filing amended schedules on June 1, 2020.

The Court does not find credible Mr. Greenhut's testimony that he failed to reflect the

potential increase on the schedule because the new job was not certain. This claim is belied by Mr. Greenhut's own actions. Although Mr. Greenhut claimed the job was uncertain, he immediately gave notice on the same day that he filed bankruptcy. In addition, Mr. Greenhut's ongoing lack of candor about his job in his deposition underscores his intention to hide the increase in income. In his deposition taken less than 11 months after starting his new job, Mr. Greenhut repeatedly evaded questions about his new job and income. He repeatedly answered "I don't know" when asked when he started, who his supervisor was, what he was paid, and how often he was paid. The Court does not find credible Mr. Greenhut's explanation that he was nervous, given the straightforward nature of the questions.

Mr. Greenhut's true intent is demonstrated by his failure to disclose the new income for more than 15 months. The Court does not find credible Mr. Greenhut's explanation that income and expenses were constantly changing, particularly when the amount in question is considered. According to his December 31, 2019 paystub from DataRobot, Mr. Greenhut received gross monthly income of $16,666 for nine months in 2019, not including the signing bonus of $10,000. Based on this paystub, after considering increased withholdings, Mr. Greenhut had average net income for the nine months of $11,370, almost $4,000 a month more than what he reported on his initial schedules. The amount was not a minor adjustment, but a significant change in circumstances.

In making its findings, the Court has considered Mr. Greenhut's sophistication and intelligence. Mr. Greenhut attended Massachusetts Institute of Technology for undergraduate and graduate school, receiving an advanced degree. By his own admission, Mr. Greenhut is an engineer who is good with numbers. Mr. Greenhut's understanding of financial matters was demonstrated repeatedly. It was Mr. Greenhut who reached out to an accountant in 2017 to raise

10

issues about the tax consequences of the advances from his parents. In addition, it was Mr. Greenhut, not his parents, who engaged counsel to prepare documents regarding the advances. Mr. Greenhut also testified that he spent considerable time and prepared multiple drafts of his schedules and statements.

The Court finds that Mr. Greenhut had no financial pressure from other creditors. Mr. Greenhut was current on his car loan, and his taxes were not due. Mr. Greenhut had been making regular payments on his credit card debt. Given the substantial funds in his bank accounts, and the small amounts due on the credit cards, the Court does not find credible Mr. Greenhut's testimony that he was unable to pay the debts. The Court finds that Mr. Greenhut stopped making payments on his credit cards in January 2019, not because he lacked the money, but to manufacture non-insider debt.

The Court also finds that Mr. Greenhut was not facing pressure from his parents to repay the funds advanced. Although the Court finds that the funds were a loan, not a gift, the Court finds that Mr. Greenhut's parents did not require interest or pressure him for repayment. The Court finds the testimony of the debtor's father, Alan Greenhut, credible that the funds were a loan to be paid back. The testimony was consistent with the checks, one of which included a notation of a loan. The informal nature of the loan is also consistent with dealings between family members, which are often not documented. Alan Greenhut explained that he expected that since his son was now grown, he would pay him back when he could. But Alan Greenhut also stated that he did not place any pressure on his son or seek payment from him.

The Court finds that the testimony of the debtor's mother, Mrs. Greenhut, was inconsistent and not reliable on the issue of interest, documentation or the pressure to repay. Mrs. Greenhut's testimony was colored by her bias against Ms. Srivastava. Mrs. Greenhut expressed

11

more than once an open hostility to Ms. Srivastava and her counsel, stating that she blamed Mrs. Srivastava for Mr. Greenhut's problems. Mrs. Greenhut often failed to answer direct questions by counsel for Mrs. Srivastava. She admitted repeatedly that Mr. Greenhut was her son and she would do whatever was needed for him. She was unable to confirm what interest rate was agreed upon and stated that she did not feel a need to review or negotiate a note. Given the foregoing testimony, the Court finds there was no agreement on terms of repayment, including interest on the loans from his parents, and no pressure for immediate repayment.

Instead, the Court finds that Mr. Greenhut decided to create misleading documents to overstate and complicate the straightforward advances. The Court finds that Mr. Greenhut's actions are further evidence of his bad faith. In December 2018, Mr. Greenhut requested that counsel prepare notes to his parents. Neither of his parents negotiated the terms of the notes nor spoke to the lawyer about the loan. Instead, Mr. Greenhut handled the transaction. Although his parents had only advanced $211,500, Mr. Greenhut caused counsel to draft notes for $800,000, almost four times as much as he had borrowed. The Court does not find credible the testimony by Mr. Greenhut that the amounts were suggested by the lawyer to cover future increases. Both parents testified that they did not have the ability to advance significant additional funds.

The other terms of the notes were also inconsistent with Mr. Greenhut's claims that he faced financial pressure. Mr. Greenhut was free to set the terms of the note since his parents did not engage in any negotiation. Although he claimed financial pressure, he did not set up a term note with payments over time. Instead, he agreed to demand notes that were immediately due. In addition, the notes provided for interest retroactively, with a payment due within less than a month, as of January 1, 2019. Despite agreeing to interest payments on January 1, 2019, Mr. Greenhut never made any payments. The Court does not find credible Mr. Greenhut's testimony

12

that he sent his parents checks but asked them not to cash them. Neither parent confirmed Mr. Greenhut's testimony. Both his parents stated that they never received a payment.

The Court does not find credible Mr. Greenhut's claim that he filed bankruptcy because of financial stress and the uncertainty of potential enforcement by Ms. Srivastava. His behavior was not consistent with someone trying to resolve their financial difficulties. In January 2019, Mr. Greenhut had an offer for a new job with a substantial increase in salary. Mr. Greenhut, not DataRobot, chose the start date. Instead of accepting the job immediately with its substantial increase in income to address his obligations, Mr. Greenhut delayed the start for two months because he wanted to participate in a contest in March 2019.

The Court also finds that the testimony of Mr. Greenhut's therapist, Lynn Bratman, does not provide evidence of his stress over financial matters. Ms. Bratman observed Mr. Greenhut in counseling sessions with his then girlfriend. The purpose of the therapy was to enable the couple to communicate better. Ms. Bratman only observed the couple together. Given the context, any behavior observed by Ms. Bratman could have been the result of causes other than financial stress, including the tension between the couple or his concern regarding the appeals in the Texas courts.

Mr. Greenhut argues that the Court must consider his performance throughout the Chapter 13 case, including his regular payments to the Chapter 13 Trustee. But the Court finds that Mr. Greenhut's actions throughout the case are also evidence of his bad faith. He continued to hide behind technical compliance, while manipulating the filings for his own purposes. As discussed earlier, despite receiving substantial income from the inception of the case, Mr. Greenhut waited more than 15 months to report the income. He attempted to obfuscate it by adding multiple additional expenses relating to his fiancée, without including her income.

Although he made no effort to adjust his initial income to reflect the increase in his income barely two weeks after the filing, his second set of schedules claimed several layers of adjustment for future expenses, substantially reducing his monthly payment. His second set of schedules, which did not include his fiancée's income, included several expenses as his sole obligation, such as $1,956 for childcare and $625 for a 529 plan. But the third set of schedules, which included his fiancée's income, confirmed that these were not solely his obligation, but either joint obligations with his fiancée (the childcare expense) or her expense alone (the Section 529 expense). The Court does not find it evidence of good faith that Mr. Greenhut regularly made payments that were intentionally grossly undercalculated.

**Conclusion**

For the foregoing reasons, the Court finds cause to dismiss the case under Section 1307 due to Mr. Greenhut's lack of good faith in filing the petition. The Court will issue a separate order consistent with this opinion.


Dated: June 2, 2023                                   By the Court,

                                                      /s/ Janet E. Bostwick
                                                      _____
                                                      Janet E. Bostwick
                                                      United States Bankruptcy Judge